**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

LORETHA H. STUCKY,

                              Plaintiff,

v.                                            DECISION AND ORDER

WAL-MART STORES, INC.,
                                           02-CV-6613 CJS(P)
                              Defendant.

---

**APPEARANCES**

For the Plaintiff:                 Kevin P. Flynn, Esq.
                                       447 Fulton Street Suite 200
                                       Waverly, NY 14892
                                       Tel: (607) 565-8990

For the Defendant:              Ginger D. Schroder, Esq.
                                       Schroder, Joseph & Associates, LLP
                                       766 Ellicott Street
                                       Buffalo, NY 14203
                                       Tel: (716) 881-4900

                                       M. Rogan Morton, Esq.
                                       Schroder, Joseph & Associates LLP
                                       766 Ellicott Street
                                       Buffalo, NY 14203
                                       Tel: (716) 881-4903

**INTRODUCTION**

Plaintiff alleges that defendant Wal-Mart Stores, Inc. ("Wal-Mart"), and specifically the one located in Elmira, New York, discriminated against her on the basis of race by refusing to accept a personal check as payment for items she intended to purchase. According to plaintiff's amended complaint, she seeks recovery pursuant to the Thirteenth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. §§ 1981 and 1982, and

the New York State Executive Law. The case is before the Court on Wal-Mart's motion (# 29) for summary judgment. For the reasons stated below, the application is granted.

## BACKGROUND

Plaintiff states she is an African-American and that Faith Moffe ("Moffe") is a Caucasian. She alleges that she and Moffe went to a Wal-Mart store in Elmira, New York ("Elmira store") on December 4, 1999. After shopping, they entered the check-out line of Wal-Mart cashier Jean Shepard ("Shepard") with Moffe in front of plaintiff. Moffe paid for her items using a check that had her address printed on its face. Shepard asked Moffe if she wanted to write the check for up to twenty dollars over the purchase amount and Moffe declined. As to this, plaintiff testified at a pretrial deposition that she did not think that it was strange that the cashier offered to let Moffe write her check for twenty dollars over the amount, and that she believed the offer was consistent with Wal-Mart's check cashing policy.

When Moffe's transaction was completed, plaintiff then presented a check to Shepard for payment of her own items, but plaintiff's check did not have her address on it. Shepard looked at plaintiff's check and told her that she could not accept it because it was against company policy to accept a check that did not have the check writer's address on it. Plaintiff protested, and several employees were called to address this situation. These included two managers, and all supported Shepard's determination that the Elmira store would not accept a check without the writer's address on it. It was explained to plaintiff that the Elmira store's check-cashing policy required that plaintiff's check include an address in order to be accepted for payment. Plaintiff left the store without making a

purchase.

Moffe returned to the Elmira store after the incident and found a posted statement labeled "Personal Checks." Moffe copied down the words, which stated,

> Personal Checks
>
> We gladly accept them for the amount of purchase.
>
> We ask that you endorse your check in front of our cashier and show proper I.D.
>
> Driver's license.
>
> Sorry we cannot accept two party checks, multiple payee check[s], post dated checks, payroll checks, checks made out to cash.
>
> Ask about our check cashing card!

Def.'s Appendix., Ex. L (notes by Faith Moffe).

At her deposition, plaintiff was asked about the policy statement Moffe found. She testified,

> A. So we [she and Moffe] looked up together and she says, there's nothing in here that says you have to have your address on it [the check]. And it said something to the fact [sic] that you can write a check in the amount of your purchase, third-party checks would not be accepted, blah, blah, blah [sic]. It also didn't say that you could write it for anything over. It stated about — I remember that it did say —
>
> Q. So everything about the policy wasn't on this written policy [sic] that was on the wall, right?
>
> A. That's correct.

(L. Stucky Dep., at 175-76.) Plaintiff also testified with regard to whether she believed the cashier's reason for not accepting her check:

> Q. Did she [the cashier] tell you that she couldn't accept your check because it did not have you address on it?
>
> A. Yes.
>
> Q. Did you have any reason to believe she wasn't telling you that because that was her understanding of Wal-Mart's policy?
>
> A. Not really.
>
> Q. You didn't have any reason to think she wasn't being truthful with you about her understanding of the policy, did you?
>
> A. No, not really.

(L. Stucky Dep., at 110.) Plaintiff further testified at her deposition that on November 22, 1999, she used a check at the Elmira store that did not have her address on it, which was accepted. (L. Stucky Dep., at 222-23.) She also produced checks, which lacked her address, that she had used at Wal-Mart in 1997. (*Id*., at 225-28.)

Plaintiff's husband, who is Caucasian, testified at a pretrial deposition that on December 5, 1999, he went to the Elmira store "[b]ecause they refused my wife's check the day before and said their policy being [sic] stringently enforced was no checks being accepted without full name and address on it [sic]." (G. Stucky Aff., at 82.) Plaintiff's husband further testified that he went to that store, "[b]ecause I wanted to see if they were — they would take my check or not." (*Id*.) Plaintiff's husband described the cashier assisting him as "a young lady, blond or light brown hair," around "eighteen, twenty" years of age with a light build and about "five, six; five, eight." (*Id*., at 83-84.) Plaintiff agreed at her deposition that her husband had used a different cashier than the one she had encountered on December 4, 1999. (L. Stucky Aff., at 203 ("It was a different cashier.").)

However, although plaintiff's husband's check lacked an address, it was accepted and no other Wal-Mart employees were called over during his transaction. He described the cashing-out process as follows:

> She [the cashier] ran the check through the scanner, said okay, please put your – I need your phone number. Well, I'm assuming she said, I need you phone number. I usually don't add it unless it's requested. I filled out the check, put the number on it and give it to her without no [sic] form of identification.

(G. Stucky Aff., at 81.)

Wal-Mart's check cashing training materials[1] require the following information to be written legibly on a personal check before moving to the next step in the check cashing process: (a) customer's name, (b) customer's complete address and (c) customer's telephone number. (Ramsey Aff. ¶¶ 1-9 and attached Exhibit A.) Additionally, Shepard stated in an affidavit, that as part of her training as a cashier, she was instructed that Wal-Mart's check cashing policy required this information to be written legibly on a personal check before it could be accepted. (Shepard Aff. ¶¶ 3-4 and attached Exhibit A.)

Shepard also stated that she has processed dozens of checks as a Wal-Mart cashier and has accepted checks from individuals of various racial and ethnic groups, including African-Americans. (Shepard Aff. ¶ 6.) Additionally, she stated that she follows Wal-Mart's check cashing policy as she understands it, based upon her training, and applies it the same way to everyone without regard to their racial or ethnic group. (Shepard Aff. ¶¶ 7-8.) Shepard further offered that she refused to accept plaintiff's check on

---

[1] The training materials were provided by Joshua Ramsey, Director of Hourly Training for Wal-Mart. (Ramsey Aff. ¶¶ 1-9 and attached Exhibit A.)

December 4, 1999 because it did not contain a full address as required by Wal-Mart's check cashing policies. (*Id*. ¶¶ 10-11.) She also said that her understanding of Wal-Mart's check cashing policy is that she cannot run a personal check through the check verification system until the name and contact information are on the check. (*Id*. ¶¶ 10-14.) Finally, it is clear from her affidavit, that hand lettering the address information on the check would be sufficient to meet Wal-Mart's requirements. (*See* Shepard Aff. ¶ 4 ("I was instructed that Wal-Mart's check cashing policy required the following information to be *written legibly* on a personal check … customer's complete address…") (emphasis added).)

With regard to her damages for this incident, plaintiff testified that actual damages were less than $15 (based on the amount of the check her husband wrote on December 5, 1999, after her check on the same account was refused the prior day). The items he purchased on the December 5 were for a craft project plaintiff was working on, and were not the same items she had attempted to purchase the previous day. Additionally, plaintiff is claiming compensation for the time and gas she used to go to the Elmira Store on December 4, which she estimated to be about one dollar. (L. Stucky Dep. 87-95.)

However, in her complaint, plaintiff's seeks $500,000 in compensatory damages, and $1,500,000 in exemplary and punitive damages, as well as costs and attorney fees. At her deposition, she explained that she made the large damage claims, "[b]ecause of — because I feel that they discriminated against me," and "I would like to see — make sure that it does not happen to anyone else." (L. Stucky Dep., at 107.) At her deposition, she responded yes to the question, "you think they [Wal-Mart] should pay between $500,000 and $1.5 million because they didn't cash your check and because you're black, right?"

(*Id.*) However, plaintiff also stated that she was familiar with quite a few black persons who shop at Wal-Mart, but was unaware of any other black person whose check had not been cashed by Wal-Mart. (*Id.*, at 107, 187.) Moffe also testified that she did not know of any other non-Caucasian individual who was unable to cash a check at the Elmira Store. (Moffe Dep., at 175.) With regard to her emotional state, plaintiff testified that from 1999 until the present she has been, and is, a happy, well-adjusted person with no emotional problems. (L. Stucky Dep., at 49.)

## STANDARDS OF LAW

### A.   *Summary Judgment Standard*

The law on summary judgment is well settled. The Court may only grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3rd Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 US 317 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable

excuse for its failure to meet this requirement. *Duplantis v. Shell Off-Shore, Inc.*, 948 F.2d 187 (5th Cir. 1991); Fed. R. Civ. P. 56(f).  Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986).  The court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990).  However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### B.   *Plaintiff's §§ 1981, 1982 & New York Executive Law Claims*

Plaintiff makes claims under two sections of Title 42. Section 1981 provides in pertinent part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (2005).  Section 1982 provides that:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982 (2005). Finally, the New York State Human Rights Law provides in relevant part as follows:

> 2. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

NEW YORK EXEC. LAW § 296(2)(a) (McKinney's 2005). Neither party has presented case law on a New York Human Rights Law discrimination case as it pertains to the factual setting of the case at bar, and the Court's research has found only employment discrimination case law. Nevertheless, it would appear from the employment discrimination case law that the Human Rights Law is generally applied in a fashion consistent with the federal civil rights laws. *See Tomka v. The Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir. 1995).

In order to prevail under any of these statutes, plaintiff must show that she is a member of a racial minority, that Wal-Mart refused to accept her check, and that Wal-Mart had an intent to discriminate on the basis of race. *Bentley v. United Refining Co. of Pennsylvania*, 206 F. Supp. 2d 402 (W.D.N.Y. 2002). These statutes prohibit both private and public discrimination. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S.

375, 387-88 (1982) ("the prohibitions of § 1981 encompass private as well as governmental action…."); J*ones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968) ("We hold that § 1982 bars all racial discrimination, private as well as public, in the sale or rental of property, and that the statute, thus construed, is a valid exercise of the power of Congress to enforce the Thirteenth Amendment."); *Cahill v. Rosa*, 89 N.Y.2d 14, 23, (1996) (Executive Law § 296(2)(a) deems it unlawful discrimination if a place of public accommodation denies its accommodations to any person on the basis of "race, creed, color, national origin, sex, or disability or marital status.").

To prove a prima facie case of discrimination, plaintiff must show that: (1) she was a member of a protected class; (2) she sought to enter into a contractual relationship with Wal-Mart; (3) she met Wal-Mart's ordinary requirements to pay for and to receive goods or services ordinarily provided by Wal-Mart; and (4) she was denied the opportunity to contract for goods or services otherwise afforded to white customers. *See Williams v. Staples, Incorporated*, 372 F.3d 662, 668 (4th Cir. 2004). To establish that the failure to contract occurred under circumstances giving rise to an inference of discrimination, a plaintiff may demonstrate that "similarly situated" customers who do not share the plaintiff's protected characteristics were treated preferentially. *Id*. Requirements for establishing a prima facie case are minimal. *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998).

### C.  *McDonnell Douglas Burden Shifting-Analysis*

Discrimination cases brought under 42 U.S.C. § 1981 and 1982, as well as cases under the New York Human Rights Law, are governed by the three-part analytical frame-

work set forth by the Supreme Court in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973). *Williams v. Staples, Inc.*, 372 F.3d 662, 668 (4th Cir., 2004); *Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 126-27 (3d Cir. 1990) ("summary judgment motions in section 1981 cases are governed by the well-known burden-shifting provisions laid down in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)); *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F.Supp. 673 (S.D.N.Y. 1996), *aff'd.* 125 F.3d 844 (2nd Cir.1997); *see also Klausner v. Industrial Risk Insurers, Inc.*, No. 98 Civ. 1267 (RPP), 1999 U.S. Dist. LEXIS 10219, 1999 WL 476285, at *3 (S.D.N.Y. July 8, 1999) (applying McDonnell Douglas to N.Y. Human Rights Law claim).

First, under the *McDonnell Douglas* standard, plaintiff, who is alleging a violation of these sections of law must establish a prima facie case as described above. Second, if plaintiff is successful in demonstrating a prima facie case, then the burden shifts to Wal-Mart to articulate a legitimate, non-discriminatory purpose for its refusal to contract. *Id*. As the Second Circuit has held, establishment of a prima facie case creates

> a rebuttable presumption that [the store] unlawfully discriminated against him. *See United States Postal Serv. v. Aikens*, 460 U.S. 711, 714 (1983) (Title VII context). To rebut this presumption, [the store] must clearly set forth, through the introduction of admissible evidence, a legitimate, nondiscriminatory reason for the disparate treatment afforded [plaintiff]. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (ADEA context).… [The store's] burden is one of production, not of persuasion. *See Reeves*, 530 U.S. at 142.

*Williams*, 372 F.3d at 668 (citation omitted).

Finally, once the store satisfies its burden, a plaintiff may prevail only if he presents evidence that the proffered reasons are a pretext for discrimination. *Id*. To demonstrate pretext, a plaintiff must show both that the proffered reason was false and that discrimination was a motivating factor. *Id*. at 669.

### DISCUSSION

In her First Cause of Action, plaintiff makes claims under the Thirteenth and Fourteenth Amendments to the Constitution. However, in her memorandum of law filed in opposition to Wal-Mart's summary judgment motion, she concedes that since there is no state action involved in Wal-Mart's refusal to accept her check, her claims under those Amendments fail. (Pl.'s Mem. of Law, at 2.)

Turning to plaintiff's remaining claims, it is undisputed is that she is a member of a racial minority, and that Wal-Mart refused to accept her check. (Def.'s Mem. of Law, at 4.) What Wal-Mart contends, however, is that plaintiff is unable to show that denial of her ability to purchase goods with a check occurred under circumstances giving rise to an inference of discrimination.

To raise a prima facie case, plaintiff relies on the differences in treatment between herself and her Caucasian husband, both using the same checking account and checks. In order to employ this method of proof, plaintiffs must show they are "similarly situated in all material respect to the individuals to whom they compare themselves." *Shumway v. United Parcel Services, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Here, the material facts are that plaintiff's check, without an address, was refused, while the same type of check, without an address, was accepted by Wal-Mart from her Caucasian husband the following

12

day. Plaintiff also compares herself to Moffe, whose check with an address was accepted by the cashier just prior to the same cashier's refusal to accept hers.

Regarding Moffe, Wal-Mart contends that she and plaintiff were not similarly situated since Moffe's check was imprinted with her address, and plaintiff's was not. Regarding plaintiff's husband, Wal-Mart also argues that he and plaintiff were not similarly situated, since plaintiff used one cashier and her husband another.

As to Moffe, the Court agrees. In that regard, the Court concludes that no reasonable jury could determine that Moffe and plaintiff were similarly situated, since Moffe's checks had the address imprinted on them, and plaintiff's clearly did not, and that difference was the cashier's stated reason for refusing plaintiff's check. *See Lizardo v. Denny's Inc.*, 270 F.3d 94 (2d Cir. 2001).

The Court also agrees with defendant as to plaintiff's husband, although the situation is more complex. Wal-Mart argues that: (1) since plaintiff is not alleging that Wal-Mart engaged in a pattern and practice of discriminating against black African-Americans; (2) since she testified she was able to use checks at Wal-Mart in the past; and (3) since she was unaware of any other African-Americans whose checks had been refused at the Elmira Store, her "entire claim is based on the theory that certain individual employees acted with a discriminatory intent and that Wal-Mart is liable for that conduct under the doctrine of respondeat superior." (Def.'s Mem. of Law, at 9.) Therefore, Wal-Mart contends that in order to be similarly situated under plaintiff's theory of liability, the same cashier must have dealt with both plaintiff and her husband. (*Id*., at 10.)

> As the Second Circuit wrote in *Lizardo*,
>
>> When plaintiffs seek to draw inferences of discrimination by showing that they were "similarly situated in all material respects" to the individuals to whom they compare themselves, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997), their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances. What is key is that they be similar in significant respects.

*Lizardo*, 270 F.3d at 101 (some citations omitted). In *Lizardo*, the district court found that the patrons with whom the plaintiffs compared themselves were not similarly situated, and the Second Circuit upheld that determination, writing,

> Whether two people are similarly situated is usually a question of fact for the jury. However, plaintiffs have not offered sufficient evidence from which a jury could reach that conclusion. As the district court noted, the groups to which plaintiffs sought to compare themselves were smaller in size, an obviously significant factor in restaurant seating.

*Id.* (citation omitted).

Here, Wal-Mart contends that the difference in cashiers is a significant factor that shows plaintiff and her husband were not similarly situated. Even though plaintiff and her husband used two different cashiers, there is no dispute that the Elmira store management was involved the day Shepard refused plaintiff's check (*see* L. Stucky Dep., at 115-16). Therefore, the Court concludes that it was that store's policy, as recognized by its management on duty, that checks required an address. Consequently, the difference in treatment between plaintiff's proffer of the nonconforming check, and her husband's treatment when he proffered a similar check the next day, at least raises the inference that the husband's check was accepted because he was white, while plaintiff's was rejected because she was black. For the purposes of a summary judgment motion, the burden on

a plaintiff to make out a prima facie case is de minimus, and the Court finds that, here, plaintiff has met that burden.

However, pursuant to the burden-shifting analysis in *McDonnell Douglas*, Wal-Mart has come forward with a nondiscriminatory reason for the difference in treatment, specifically that plaintiff's check was refused because it did not have her name and address on it and that the second cashier's acceptance of plaintiff's husband's check was a mistake. Therefore, to defeat the summary judgment application, plaintiff must show that defendant's proffered reason is false and that discriminatory animus was a motivating factor. Wal-Mart contends that their check-cashing policy is clear and points to the training materials and Shepard's affidavit as proof of the contents of that policy. In this regard, plaintiff points to the contradictory and publically-posted sign as proof of the check cashing policy, that is, the written training materials *do* require a name and address, whereas the posted sign is silent on that requirement.

Moreover, Wal-Mart argues that plaintiff has failed to show that Shepard and her supervisors intended to discriminate against plaintiff on the basis of race, since the cashier with whom her husband transacted business the following day was not any of the employees who spoke with plaintiff the previous evening. Had her husband gone through Shepard's line and had his check been accepted by her, notwithstanding that it did not contain his name or address, then, Wal-Mart argues, he would be a valid "comparator" for the purposes of establishing intentional discrimination. Significantly, plaintiff herself has testified that she did not believe Shepard was being dishonest when she described Wal-Mart's check cashing policy and told plaintiff that her check was not in conformance with

that policy. (L. Stucky Dep. at 112.)

In its reply memorandum, Wal-Mart contends that its check cashing policy is irrelevant to the alleged discrimination in this case. Specifically, they argue that plaintiff's admissions that her checks had been accepted by the Elmira store one week prior to December 4 shows that if there was any discrimination on December 4, it was only by Shepard and the managers who ratified her decision not to accept plaintiff's nonconforming check, not by Wal-Mart, the only defendant. Plaintiff's memorandum of law does not discuss whether Ms. Shepard's and her managers' conduct can be imputed to Wal-Mart under the theory of respondeat superior. In the employment context, under the New York Human Rights Law, "[r]espondeat superior has been squarely rejected." *Negussey v. Syracuse University*, No. 95-CV-1827, 1997 WL 141679, *5 (N.D.N.Y. Mar. 24, 1997). Under § 1981, though, respondeat superior does apply. *Id*.; *see also Tomka*, 66 F.3d at 1323 (Parker, J., dissenting); *id.* at 1316 (majority agrees). However, *Tomka* was an employment discrimination case. In a factually-similar case to the one at bar, the Eighth Circuit observed:

> We question whether Dillard's in any event may be held liable under §§ 1981 and 1982 for the allegedly discriminatory actions of an unidentified sales clerk under a theory of respondeat superior. Liability under §§ 1981 and 1982 requires a showing of intentional discrimination, *Dirden v. Dep't of Hous. & Urban Dev.*, 86 F.3d 112, 114 (8th Cir.1996) (*per curiam*), which is seemingly incompatible with respondeat superior principles. *See Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1236 (5th Cir.1989) ("Because each defendant must be found to have intentionally discriminated against the plaintiff, strict liability under § 1981 is incongruous."); *cf. Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir.1993) (holding that a private store acting under color of state law cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory). Because the parties have neither raised nor briefed the issue, we leave its

resolution to another day.

*Daniels v. Dillard's, Inc.*, 373 F.3d 885, 888 n.4 (8th Cir. 2004). Like the situation in *Daniels*, the parties have not briefed this issue, and plaintiff has not presented any evidence that Wal-Mart management intentionally discriminated against plaintiff.

Based on its review of the evidentiary proof in admissible form, the Court determines that plaintiff has not raised a material issue of fact to preclude summary judgment, and that Wal-Mart has shown that plaintiff will be unable to meet her burden of proving intentional discrimination. Therefore, Wal-Mart is entitled to summary judgment.

## CONCLUSION

For the reasons above, the Court grants Wal-Mart's motion for summary judgment (# 29). The Clerk is directed to enter judgment and close this case.

SO ORDERED.

Dated:   August 19, 2005
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge